**UNITED STATES of America**
v.
**Nicholas MASSIANO.**
**Cr. A. Nos. 1636, 1672.**

United States District Court
D. Delaware.
Dec. 14, 1965.

Alexander Greenfeld, U. S. Atty., and Stanley C. Lowicki, Asst. U. S. Atty., Wilmington, Del., for the United States.

James P. D'Angelo, Wilmington, Del., for defendant.

LAYTON, District Judge.

On June 19, 1964, an information was filed against the defendant, Massiano, charging him with being a receiver of wagers, or numbers writer, without paying the special occupational tax for the fiscal year ending June 30, 1964, as required by Title 26, U.S.C. Sec. 4411 and 7262. Later, defendant was charged in an additional information in two counts covering the same period with the unlawful and wilful failure to pay the special occupational tax and to register, as required by Title 26, United States Code, Sections 4411, 4412 and 7203. Upon a plea of not guilty to both informations, the cases were later consolidated and defendant went to trial without a jury in January, 1965. At the termination of the trial, he filed two motions for acquittal. The first was denied but since the second went, in part, to constitutional grounds, the Court ordered it briefed and argued.

In general, the second motion contended (a) that even on all the evidence admitted, the prosecution failed to prove guilt beyond a reasonable doubt and, (b) that the testimony of an informer, Italiano, was inadmissible under the Fourth, Fifth and Sixth Amendments to the Federal Constitution with the result that, if the testimony were stricken, the government failed by a wide margin to prove guilt beyond a reasonable doubt.

First, was the defendant guilty beyond a reasonable doubt if all the challenged evidence was legally admissible? In my judgment he was. The government introduced evidence through the informer to the effect that defendant accepted wagers from the informer, Italiano, on a number of occasions during May and June 1964. Three of these wagers were amply corroborated by way of evidence obtained during raids on the premises of one Pepe and a girl named Dot Marshallton. Moreover, defendant was overheard by a government agent, Toscano, to admit that he was engaged in wagering during the periods charged in the information. Lastly, there was unchallenged proof (1) that defendant failed to purchase the $50.00 gambling stamp required by law and (2) that he was aware that the purchase of such a stamp was required by federal law as a condition precedent to engaging in wagering.

Accordingly, assuming the questioned evidence was admissible, I find the defendant guilty as charged beyond a reasonable doubt.

The next question concerns the admissibility of most of the evidence of the informer, Italiano. The Court would concede that without this, the government's case might well fall.

The government proved its case in large part through the testimony of the informer who, working in close conjunction with federal agents, testified that he placed numbers bets with defendant during the periods in May and June charged in the information. Italiano had a transmitter strapped to his chest and his conversation with defendant while placing wagers was received by a federal agent located nearby and recorded on a tape recorder. However, it is important to note that never throughout the trial did the government attempt to rely on testimony obtained through the electronic device. In every instance, the government relied entirely on Italiano's oral evidence as to wagers claimed by him to have been placed with defendant. Despite the complete absence of the use of any communications devices as evidence in the case, defendant in his briefs persists in waving this red herring throughout certain of the points raised by his motion.

Defendant's first contention seems to be that the use of the electronic device violated the federal wiretapping law, 47 U.S.C. Sec. 605. Even if evidence obtained through the medium of the transmitter had been used at the trial, which it is again emphasized it was not, there would have been no violation of the wiretapping law. Hall v. United States, 308 F.2d 266 (5 Cir. 1962); Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957).

Secondly, it is urged that the evidence obtained by way of the electronics device, even though not used at the trial, was nevertheless illegal and may have led to other evidence which was admitted at the trial, with the result that the fruit of the poisonous tree doctrine applies. This point faces two impossible hurdles. First, the use of the electronics transmitter was not illegal. Compare United States v. Tane, 329 F.2d 848 (2 Cir. 1964), where there was a clear violation by government agents of the federal wiretapping law. In fact, both On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952) and Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963)

have expressly sanctioned the use of such devices in obtaining evidence. Nor does the reliance on Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), support defendant's argument, for there, the use of the electronics device was in connection with a clear trespass which is here not the case. See also in this connection Clinton v. Virginia, 377 U.S. 158, 84 S.Ct. 1186, 12 L.Ed.2d 213 (1964). In the case at bar, most, if not all, the wagers were placed by Italiano with defendant in Pepe's store where Italiano worked and, in fact, resided on the third floor, so that there could be no question of a trespass.[1]

Secondly, unlike Tane where the tainted evidence was clearly identifiable, defendant here has not even attempted to demonstrate just what evidence resulting from the alleged illegal use of a communication device (or otherwise illegally obtained) consisted of "fruit from the poisonous tree." He says government's Ex. 5[2] was tainted with illegality but fails to say why. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407,

[1]. Up to the present, the United States Supreme Court has maintained that some physical trespass is necessary, and that any physical penetration, no matter how miniscule, results in an illegal search and seizure. Clinton v. Virginia, 377 U.S. 158, 84 S.Ct. 1186, 12 L.Ed.2d 213 (1964). In view of the technological developments in the art of eavesdropping, the Court may be forced to ban eavesdropping which can be accomplished without any physical penetration whatever. However, the Fourth Amendment right to privacy cannot be stretched to include the present case. Even if the standard of Hamburger v. Eastman (Sup.Ct.N.H. 1964) 206 A.2d 239 is applied, there has been no invasion of privacy in the instant case. The standard of civil law (see Harper and James, Law of Torts, Sec. 9.6; Prosser on Torts, 2 Ed., Ch. 20, Sec. 97, page 843) defines an eavesdropper as one who secretly listens to a communication without the consent of any of the parties to the communication. But in the instant case, Italiano was physically present during all of the recorded conversations. The privacy of the defendant was never invaded. The privacy of the store owner, Tom Pepe, was never invaded under any possible construction of the Fourth Amendment right to privacy.

[2]. A tape, somewhat like the type of slip run by a supermarket sales machine, on which bets were recorded by way of a code which was interpreted by the government witness, Toscano, who qualified himself sufficiently as an expert in the field of gambling and numbers writing. This tape was seized in a raid on the premises of a co-defendant. On this tape appeared the record of three bets testified to by Italiano as having been placed by him with the defendant. I accept the evidence of Toscano who testified he has seen many such supermarket sales slips used as a code by numbers writers. The sole objection made to the introduction of this exhibit was to the effect that the defendant who interpreted the code was not a reliable expert, clearly an improper objection. There was no objection that the raid was illegal in that it was made without a warrant, etc.

**4**

417, 9 L.Ed.2d 441,[3] requires not only that the original testimony be illegal but a demonstration that the further evidence to which objection was made, was obtained as a result of exploring that illegality. Defendant wholly failed to meet this burden. Indeed, he made no objection on this ground at trial. This argument is without merit.

■ Defendant's third point is the only one deserving more than passing discussion. First he cites Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 236, where the Supreme Court held that defendant was denied the protection of the Sixth Amendment because there was admitted against him in evidence his own incriminating words, which federal agents had elicited from him *after he had been indicted* and in the absence of his lawyer. Then he attempts to extend back the thrust of Massiah from the indictment stage of a proceeding to the accusatory stage of a proceeding as in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Accordingly, he argues that the admissions made by defendant in accepting all the wagers made with him by Italiano were involuntary because made at a stage of a case which, under Escobedo, required the presence of his lawyer.[4]

In the first place, Escobedo is scarcely applicable to these facts. Here there was no coercion, force, threats or improper persuasion. The accepting of the wagers by defendant was voluntary on its face as in Massiah. On its facts, Escobedo is a Fifth Amendment case. This is a Sixth Amendment situation. Nothing in Escobedo suggests that it contemplated the broadening of the Sixth

Amendment right to counsel under facts such as these. See United States v. Cone (C.A.2 En Banc) 354 F.2d 119.

Moreover, Escobedo has created considerable confusion and courts are still groping for its full meaning. Even assuming arguendo that it applies to this case, its scope should be restricted to its facts and not further extended. It stated, inter alia:

"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody,* the police carry out a process of interrogatories that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer,[5] and the police have not effectively warned him of his absolute constitutional right to remain silent, * * *" (Emphasis added.)

One of its expressed conditions was that the suspect had been taken into police custody at the time of the confession, *a fact not present* in the case at bar.

Moreover, to extend the constitutional right to counsel to a point prior to some clearly identifiable stage of a criminal proceeding such as arrest in fact or implied by strict police custody, as in Escobedo, would not only serve to compound confusion but would amount to an unwarranted interpretation of the meaning of the word "case" appearing in the Fifth Amendment and "prosecution" in the Sixth.

Finally, again assuming arguendo that Escobedo applies here, it is my opinion

---

3. "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection was made has been come at by exploration of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

4. This argument requires also the help of U. S. ex rel. Russo v. State of New Jer-

sey (C.A. 3 May 20, 1965), 351 F.2d 429 where the Third Circuit Court extended Escobedo to include situations where defendant did not specifically ask for a lawyer before making incriminating statements.

5. Not a condition precedent here because of the advent of Russo.

that the incriminating statements spoken by this defendant were not given during the accusatory stage of the proceeding as contemplated by Escobedo. This requires more extended discussion.

 Escobedo was a single act, murder. The confession was obtained after the police already had convincing evidence that defendant had fired the fatal shots and needed only a confession to "wrap the case up." Here we have a different type of crime, the willful and unlawful failure to purchase an occupational tax stamp.[6] The courts themselves have, for practical purposes, placed the burden upon the prosecuting authorities in cases such as these to the proof of not one, but a series of several such acts [7] thus making it even more difficult to apply the rule of Escobedo. Moreover, judicial notice may be taken of the manner in which investigations of wagering stamp violations are carried on. The government habitually sends into a given district a team of federal agents unknown to the underworld community. These agents acting either under false identities or through informers, or both, single out rumored number writers [8] and bookmakers and attempt to place a series of wagers with them lasting over a period of time, in this case over a month. At a predetermined date, a number of raids are carried out simultaneously on the establishments of writers or bookies with whom undercover agents have placed several bets. On these raids it is hoped to seize evidence of numbers writing or bookmaking (slips of paper on which bets are recorded and many other items) and, if fortunate, as in this case, recorded evidence of the very bets made by the undercover man. Only at this stage are the defendants actually arrested. It is interesting to note that in the case at bar, the three wagers corroborated by recorded evidence obtained by the raid were not made until *the very day before the raid.* Under these facts, then, to argue that the accusatory stage of this case had been reached before evidence sufficient to corroborate the unsupported word of an underworld informer had even been obtained is, at least, debatable.[9]

The facts of this case do not fall within the scope of Escobedo for the reasons stated. The evidence objected to did not fall within the prohibition of the Fourth, Fifth or Sixth Amendments and was, therefore, admissible. The defendant is guilty.

---

6. In order to prove that defendant has violated the law by failing to register and purchase the occupational, or gambling stamp, it must necessarily prove that he was engaged in the business of receiving wagers.

7. A typical charge reads: "While one or two single isolated transactions do not make the acceptor of wagers a writer, nevertheless, evidence of a person engaged in a single writing transaction when connected with other incriminating circumstances *may, if the jury should so believe,* furnish sufficient evidence to support a finding of [guilty]." (Emphasis added.)
This Court has never seen a case where the government relied on a single bet to support its case.

8. Of course, the records of the District Director of Internal Revenue disclose whether a person rumored to be a writer or bookie has purchased a stamp. If so, he is, of course, not investigated, for, under federal law, numbers writing and bookmaking are not illegal per se.

9. While reasonable minds may differ as to whether the investigation of defendant's activities had reached the accusatory stage, nevertheless, this discussion at least serves to point up the almost impossible task facing government agents in obtaining a conviction in this sort of case if the Sixth Amendment were held to require a warning to defendant of his right to remain silent after the first two or three bets had been placed by the informer with the defendant.