**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Taylor Harding COOPER, Defendant-
Appellant.**

**No. 16187.**

United States Court of Appeals
Sixth Circuit.

Sept. 2, 1966.

Dale Quillen, Nashville, Tenn., for appellant.

Carrol D. Kilgore, Asst. U. S. Atty., Nashville, Tenn., for appellee, James F. Neal, U. S. Atty., Nashville, Tenn., on the brief.

Before EDWARDS, Circuit Judge, TAYLOR, District Judge*, and THORNTON, Senior District Judge **.

THORNTON, Senior District Judge.

Appellant was indicted for conspiracy to operate a distillery, in violation of Title 26 U.S.C. §§ 5601(a), 5602 and 7201. The co-conspirator, Charlie Washington, began working with the Federal agents on October 4, 1961. Although the indictment alleged that the conspiracy commenced in August 1961 and continued past October 4, 1961, the Trial Court ruled that the conspiracy ended when Washington began working with the Federal agents and that no acts done by the defendant after October 4, 1961 could be considered as overt acts. At the trial, recordings and recollections of telephone conversations occurring on and after October 4, 1961 were offered to corroborate the testimony of the co-con-

spirator, Washington, as to the prior existence of the conspiracy.

The case was tried twice; the first trial was declared a mistrial because of the jury's inability to agree. At the conclusion of the first trial the exhibits in the case were stored in an envelope in the Clerk's vault and the docket entries do not show that any exhibits were withdrawn between the first and second trials.

Before working with Federal Agent Hahn, Washington had operated a distillery behind his home for about one month; the appellant, Cooper, furnished the money for Washington to set up the still. During this period of operation Washington had no knowledge that the government agent had located the distillery. Prior to the time he agreed to work with the agents he had talked by telephone to Cooper a number of times about their joint enterprise, Cooper having previously furnished Washington with his unlisted home telephone number on a slip of paper that Washington subsequently turned over to Agent Hahn. Thereafter Washington made a number of telephone calls to Cooper, with Agent Hahn and a brother Agent listening in. The appellant asserts that the Trial Court erred in allowing Hahn to testify about statements made during a telephone communication between the co-conspirator, Washington, and a person whose voice Hahn could not identify.

The arrangement between the co-conspirator and Agent Hahn regarding the "listening in" activity of Hahn is found in that part of Washington's trial testimony that is as follows:

"Q. Now did Mr. Hahn give you any instructions as to or state whether Mr. Hahn gave you any instructions as to when to call Mr. Cooper or anything of that nature?

---

* Robert L. Taylor, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

** Thomas P. Thornton, Senior District Judge of the Eastern District of Michigan, sitting by designation.

A. No, sir. He told me to call him normally like I always had called him. If I wanted to talk to him, call his number. Said he wasn't going to tell me how to work it one way or the other because he figured I knew better than he did. But he wanted to know everything that I done.

Q. Now were any arrangements made between you—, state whether any arrangements were made between you and Mr. Hahn for his listening to these telephone conversations?

A. Yes, sir.

Q. State whether you made a number of telephone calls with Mr. Hahn listening in?

A. Yes, sir, I did, I made several with Mr. Hahn and Mr. Lauderdale.

Q. Mr. Harry Lauderdale?

A. That is true.

Q. Is he another Federal agent?

A. Yes, sir.

Q. Now, state whether in making these calls you agreed to allow Mr. Hahn to listen in on the telephone calls.

A. Yes, sir, I agreed to allow him to listen in.

Q. Did you make any agreements as to the recording of any of those telephone calls?

A. Yes, sir.

Q. State whether a number of them were recorded with your consent and in your presence.

A. That is true.

Q. In making the telephone conversations that Mr. Hahn recorded, who did you call?

A. I called Mr. Cooper.

Q. At what number did you use?

A. Well, I have done forgot his number right now. In other words—

Q. State whether it is the same number that was on this slip of paper.

A. Yes, sir, that is the same number. I got it out of my file.

Q. Now, in placing those calls and in having them recorded, state whether you recognized Mr. Cooper's voice on the telephone.

A. Yes, sir, I recognized his voice.

Q. Have you since listened to these recordings of those telephone conversations?

A. Once.

Q. Are you certain that these are the same telephone conversations that you made?

A. Those are the same. Those are them."

The answer to the contention of the appellant that the Trial Court was in error in allowing Agent Hahn to testify about statements which he had heard made over a telephone by a voice which he could not identify is found in the foregoing testimony, which clearly establishes that on the occasion of each telephonic conversation the voice on the other end of the conversation was identified by Washington as the voice of appellant Cooper.

Here for our determination is the question of whether the Trial Court erred in admitting the testimony of the Federal Agent as to conversations overheard by him and in allowing the use of recordings of intercepted conversations under the circumstances here present. Section 605 of Title 47, U.S.C.A. reads, in part, as follows:

" * * * [N]o person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

Rathbun v. United States, 355 U.S. 107, 110, 78 S.Ct. 161, 2 L.Ed.2d 134 is authority for the following:

"The clear inference is that one entitled to receive the communication may use it for his own benefit or have

another use it for him. The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. It has been conceded by those who believe the conduct here violates Section 605 that either party may record the conversation and publish it. The conduct of the party would differ in no way if instead of repeating the message he held out his handset so that another could hear out of it. We see no distinction between that sort of action and permitting an outsider to use an extension telephone for the same purpose.

\* \* \* \* \*

Common experience tells us that a call to a particular telephone number may cause the bell to ring in more than one ordinarily used instrument. Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. Consequently, one element of Section 605, *interception*, has not occurred."

In describing how the telephonic recordings were made Agent Hahn testified that he and Agent Lauderdale had a telephone upon which they placed an extension. They then took a suction mike and put it on the telephone and connected it to the recording machine. They could thus make recordings off the telephone, through the suction mike, and listen to the conversations simultaneously.

■■ The appellant also claims that the Trial Court was in error in playing the sound recordings to the jury, over his objection. In this regard he first complains that the authenticity and correctness of the recordings were not established in accordance with the guidelines for testing the admissibility of recordings as set forth in 58 A.L.R.2d 1026–1028. We will not here discuss the necessity for explicitly conforming to these guidelines. The transcript of the second trial establishes that the Trial Judge recalled the qualifications for the admissibility and use of the recordings at the first trial of this cause and that there was an absence of objection by defense counsel (at the second trial) to the nonestablishment of authenticity by the government before the recordings were offered and admitted in evidence. The appellant's record on appeal contains no reference to any of the circumstances surrounding the admission of the recordings at the first trial. In the absence of anything to the contrary being called to the attention of this Court, we have the right to assume that the Trial Judge followed the proper procedure in admitting the recordings into evidence at the first trial and that he was not required to again listen to the recordings, out of the presence of the jury (at the second trial), on the theory that the Court is not required to engage in redundant procedures. As we previously stated, during the interval between the first and second trials the recordings were in the custody of the Clerk of the Court, stored in a large envelope in the vault of the Clerk's office, and the docket entries do not disclose that these exhibits were withdrawn between the two trials.

■ Appellant further complains that the recordings were so inaudible and indistinct that the jury would have had to speculate as to what was said. This Court, at the conclusion of the arguments before it, listened to the recordings and, although there were times when we were not able to decipher all of the words, in general the recordings were distinctly audible and most of the import of the conversations between Cooper and Washington was conveyed. In explaining the effect of partial inaudibility the Court of Appeals for the Ninth Circuit, in Cape v. United States, 283 F.2d 430, 435 (1960), stated:

"We have listened to the recording carefully; although some portions are unintelligible, many significant parts are not. The thread, though thin in

places, is never completely broken. We cannot unhesitatingly say that the inaudible segments are 'so substantial' as to render the whole 'untrustworthy' or that the lower court abused its discretion in admitting it in evidence."

■ Finally, the appellant contends that the cases cited by the appellee in its supplemental brief filed herein are not controlling in that they deal with factual situations that are different from those here present. Keeping in mind the testimony of Agent Hahn as to the placing of a suction mike on an extension phone and connecting it to the recording machine permitting him and his fellow agent to listen and to record the conversation at the same time, with the permission of one of the parties to the telephonic conversation, the following language from the case of Lopez v. United States, 373 U.S. 427, 438–439, 83 S.Ct. 1381, 1387–1388, 10 L.Ed.2d 462, is pertinent:

"Once it is plain that Davis could properly testify about his conversation with Lopez, the constitutional claim relating to the recording of that conversation emerges in proper perspective. The Court has in the past sustained instances of 'electronic eavesdropping' against constitutional challenge, when devices have been used to enable government agents to overhear conversations which would have been beyond the reach of the human ear. See, e.g., Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area. Silverman v. United States, supra [365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734]. The validity of these decisions is not in question here. Indeed this case involves no 'eavesdropping' whatever in any proper sense of that term. The Government did not use an electronic device to listen in on conversations it could not otherwise have heard. Instead, the device was used only to obtain the most reliable evidence possible of a conversation in which the Government's own agent was a participant and which that agent was fully entitled to disclose. And the device was not planted by means of an unlawful physical invasion of petitioner's premises under circumstances which would violate the Fourth Amendment. It was carried in and out by an agent who was there with petitioner's assent, and it neither saw nor heard more than the agent himself.

The case is thus quite similar to Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134, in which we sustained against statutory attack the admission in evidence of the testimony of a policeman as to a conversation he overheard on an extension telephone with the consent of a party to the conversation. The present case, if anything, is even clearer, since in *Rathbun* it was conceded by all concerned 'that either party may *record* the conversation and publish it.' 355 U.S., at 110, 78 S.Ct. at 163. (Emphasis added.)

Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory. We think the risk that petitioner took in offering a bribe to Davis fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording."

The judgment of the District Court is affirmed.