COMMONWEALTH *vs.* EDWARD MAIANI & others [1]
(and eight companion cases).

Suffolk. May 6, 1968. — May 31, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Eavesdropping. Evidence,* Telephone conversation.

A pre-trial motion in a criminal case to suppress the use in evidence of telephone conversations intercepted and recorded on a tape recorder attached to the telephone of a householder by police and subsequently transcribed should be denied where it appeared that the householder had requested the police to attach the recorder and the Commonwealth did not propose to introduce telephone conversations to which the householder was not a party or which he did not consent to have intercepted and recorded; it was immaterial to the question of legality of the interception whether a court order under G. L. c. 272, § 99, authorizing it was obtained and whether persons other than the householder might have used the telephone. [378]

Recording of telephone conversations of a householder with his consent on a tape recorder attached to his telephone by police at his request would not show a violation of 47 U. S. C. § 605 (1964). [379]

INDICTMENTS found and returned in the Superior Court on March 6, 1967.

---

[1] Other defendants are Richard Castucci, William Cafasso, Michael Nazzaro, and Guy Lauria. There were nine separate indictments.

Commonwealth v. Maiani.

Questions of law were reported by *Moynihan*, J.

*Harvey A. Silverglate* for the defendant Castucci.

*Jack I. Zalkind*, Assistant District Attorney (*Roger M. Carey*, Legal Assistant to the District Attorney, with him), for the Commonwealth.

*Joseph S. Oteri* for the defendant Maiani & *John P. White, Jr.*, for the defendant Cafasso, joined in a brief.

CUTTER, J. The defendants were each indicted for (a) conspiracy to conduct a small loans business without a license in violation of G. L. c. 140, § 110 (as amended through St. 1962, c. 795, § 2; see later amendment by St. 1967, c. 196), and (b) violation of § 110. Maiani is also charged with extortion and he, Nazzaro, and Castucci are charged with conspiracy to extort. Each defendant filed a "pre-trial motion to suppress the use in evidence of certain telephone conversations, recordings" of such conversations, and other evidence "obtained by or as the result of a wire-tap or by means of an electronic or other . . . recording device." The trial judge, without decision, on December 11, 1967, reported the motions (G. L. c. 278, § 30A) upon findings which adequately present the question of law whether he should allow the motions to suppress the evidence of the recorded telephone conversations between the defendants and Austin Mortensen.[2] This report was made before our recent decision in *Commonwealth* v. *Douglas*, *ante*, 212.

Upon evidence presented at the pre-trial hearing on the motions to suppress, the trial judge found the following facts: Mortensen resided in Somerville with his wife and children. During the latter part of February, 1967, and on March 1, 1967, Mortensen complained to police officers of telephone calls to his house in Somerville threatening him with bodily harm. He stated that he had received numerous calls from Maiani, Nazzaro, and Lauria demanding the repayment of illegal loans made to him. Mrs. Mortensen

---

[2] He first reported two other questions: (a) whether G. L. c. 272, § 99, is void on its face as in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States, and the Constitution of the Commonwealth; and (b) whether an order of March 2, 1967, referred to in the text of the opinion was valid.

stated that she had received telephone calls from unknown persons ordering her to tell her husband to pay the money owed by him on loans. Mortensen requested the police to attach a device to record conversations on his house telephone.

On March 1, 1967, two Boston police detectives, Paul R. McLean and John Doyle, attached to the staff of the district attorney for Suffolk County, went to Mortensen's house and connected a recording device to his telephone.[3] "The entire mechanism . . . [was] installed . . . with . . . [Mortensen's] consent . . . and . . . [he] authorized the police to listen to all conversations that were transmitted through his telephone during the time the conversations were being . . . recorded." After the device was installed, Mortensen called Maiani and had a conversation with him.

The recording device remained attached to the Mortensen telephone for eight or nine consecutive days and during that period all incoming or outgoing calls were recorded, including conversations with Maiani and Nazzaro. The tapes on which these conversations were recorded were subsequently transcribed by the police.

On March 2, 1967, an assistant district attorney made application to a judge of the Superior Court for an order under G. L. c. 272, § 99, as amended by St. 1959, c. 449, § 1,[4] authorizing the district attorney, and any of his assistants, police officers, or other persons acting under his direction, to intercept communications on the Mortensen telephone, "beginning March 1, 1967, and for three months thereafter." The requested order was issued on March 2, 1967.

---

[3] At first the device consisted of a suction cup induction coil attached to the receiving end of the telephone hand set and connected to a tape recorder. At some later time Detective McLean removed the suction cup from the hand set and replaced it with two clips attached to the telephone wire.

[4] The first part of § 99 is quoted in the *Douglas* case, *ante*, 212, 220–221, fn. 4. It is provided in the later portions of the section that an order authorizing listening of a type otherwise prohibited by the section "may be issued . . . by any justice of the . . . superior court upon application of . . . a district attorney for the district verified by his oath . . . that there are reasonable grounds to believe that evidence of crime may thus be obtained." The section provides in some detail the procedure to be followed in connection with such an application and order.

1. Our decision in the *Douglas* case, *ante*, 212, controls the present cases. The defendants make no contention that the Commonwealth proposes to introduce evidence of any telephone conversations to which Mortensen was not a party or which he did not consent to have intercepted and recorded. Thus the facts appear to be very closely like those in the *Douglas* case, which also involved both loans made in violation of G. L. c. 140, § 110, and threats to extort.

The principal difference between these cases and the *Douglas* case is that in the present cases a court order under § 99 in fact was obtained, whereas in the *Douglas* case no such order was sought or issued. That difference is immaterial.

2. For reasons fully stated in the *Douglas* case, *ante*, 212, 220–221, no order was necessary under § 99, which has no application to listening or recording with "the consent of either a sender or receiver" of the conversation. Mortensen, obviously acting for his own protection from threats and attempted coercion, consented to the recording of his conversations and the attachment of the device to his telephone. It is fairly to be implied from the subsidiary facts stated that Mrs. Mortensen also consented. It is not shown that any conversations over Mortensen's telephone with any persons other than Mortensen or his wife were to be offered in evidence. If other persons used the telephone, we think that would not affect the consent to the recording of conversations with any of those persons who gave consent, or the use in evidence of conversations in which they participated.[5]

---

[5] As stated in the *Douglas* case, *ante*, 212, 221–223, we do not regard recent decisions of the Supreme Court of the United States as precluding introduction in evidence of a recording of a telephone conversation, made with the consent of one participant to protect him from telephoned criminal threats and attempted extortion. See e.g. *Rathbun* v. *United States*, 355 U. S. 107, 109–111; *Lopez* v. *United States*, 373 U. S. 427, 437–440; *Osborn* v. *United States*, 385 U. S. 323, 327–331; *Berger* v. *New York*, 388 U. S. 41, 44–45; *Katz* v. *United States*, 389 U. S. 347, 354–359. Cf. Greenawalt, The Consent Problem in Wiretapping: Surreptitious Monitoring with the Consent of a Participant in a Conversation, 68 Col. L. Rev. 189, which seriously underestimates the public interest and the interest of a victim of telephoned threats and extortion in recordings as a method of preventing such criminal action. One who invades the privacy of another by telephoned threats cannot be heard to complain that his own privacy has been invaded by recording his threats as a protective measure.

Because § 99 was not violated, we have no occasion to consider now whether the procedure for issuing orders contained in c. 272, § 99 (see also the related provisions of §§ 100–101 as amended), is valid.

3. For the reasons stated in the *Douglas* case, *ante*, 212, 221–223, we think that there was no violation of 47 U. S. C. § 605 (1964). On this question the cases appear to be governed by *Rathbun* v. *United States*, 355 U. S. 107, 109–111, and *Dryden* v. *United States*, 391 F. 2d 214 (5th Cir.). Cf. *United States* v. *White*, 36 U. S. L. Week 2613 (7th Cir.).\*

4. Two questions (see fn. 2) need not be answered. The third and principal question (discussed at length above) is to be answered that there is no occasion to allow the defendants' motions to suppress.

*So ordered.*

\* The opinion in this case, originally announced on March 18, 1968, by a three judge panel, was superseded by an en banc opinion announced on January 7, 1969, 405 F. 2d. 838. REPORTER.