Springer, C. J.,
concurring and dissenting:
I concur in the judgment of the court reversing the trial court because it is clear that Mr. Lane could not have intentionally violated NRS 200.620. Only three members of this court can agree as to what the statute means. We certainly cannot hold Mr. Lane criminally responsible for violating a statute the meaning of which cannot be agreed upon by the members of this court.[1]
I cannot agree with the majority that under Nevada law it is a crime for one party to a two-party telephone conversation to tape-record that conversation. The majority holds that one who tape-records his own telephone conversation with a tape recorder intercepts his own conversation. “Intercept” is the key to criminal liability under NRS 200.620. Unless there is an intercepting there can be no criminal conduct. Consequently, in order to hold that Mr. Lane engaged in criminal conduct, this court was forced to say (improvidently) that tape-recording one’s own conversation constitutes an interception. It does not. An “interception” requires a third person. Only a third person can intercept a com *1183 munication, just as only a third person can intercept an attempted forward pass between a passer and a receiver. Where there are only two persons, there cannot be an interception no matter how hard we try to stretch the law and the facts.[2] It is clear to me that Mr. Lane did not “intercept” anything and that he was not engaging in criminal conduct when he recorded his own telephone conversation.
“Every statute must be interpreted in the light of reason and common understanding to reach the results intended by the legislature.” Rathbun v. United States, 355 U.S. 107, 109 (1957). There can be no doubt about the “common understanding” of the word “intercept”; and, under this understanding, it is idle to argue that when two people are talking to each other, one could be “intercepting” the conversation of the other. I think that no one would disagree about the general meaning of “intercept”; and it seems odd to me that this court would give the word an entirely different meaning when it is applied to two people engaged in “wire communication,” that is to say, a telephone conversation.
The majority holds that tape-recording a telephone conversation falls within the statutory language “intercept any wire communication.” When I saw this, I asked myself first, “What about wireless communications?” “Is it a crime to ‘intercept’ (tape-record, I guess) communications by radio?” The statute restricts itself to “wire communications”; so I must suppose that one can tape-record radio and other “wi'reless,” two-party conversations. Why would the legislature call recording a telephone conversation an illegal interception and at the same time not consider the recording of a radioed, two-person conversation as being a criminal “interception”? I wonder, too, why the legislature would concern itself with “tape-recorded” conversations and not manually-recorded conversations. One participant in a two-way telephone call could, I assume, dictate the entire conversation for verbatim transcription by a notarial amanuensis. This would result in an accurate, authenticated “recording” of the entire conversation. Perfectly legal under NRS 200.620? It would seem so. I do not read in the majority opinion an explanation of why the legislature would want to make it a crime to tape-record one’s own telephone conversation and ignore the “interception” of other kinds of two- *1184 party, “non-wire” communications and non-electronic or manual recordings.
In sum, then, the word “intercept” cannot reasonably be held to mean one thing generally and another thing when people are engaged in telephone conversations. Recording the content of a conversation by one participant in a two-person conversation, whether done electronically or manually, cannot be called an interception no matter how hard we stretch. The NRS 200.620(1) interception language applies only where third persons “intercept . . . [the] wire communication” of others. There can be no caviling about the meaning of the word “intercept.” The root of the word (capere, to capture or seize) tells us what the word is all about.[3] One cannot “seize” something to which he has the right to possession. As mentioned above, no one would consider it possible for either a football passer or receiver to be a pass interceptor, obviously, it takes a third person to capture or seize the football from its intended, two-person, passer-receiver course. Mr. Lane did not have the capacity, as the participant in a two-way conversation, to intercept anything, any more than the receiver of a forward pass can be said to have “intercepted” the pass.
One wonders, then, how the majority could ever get to the point of calling receiver Lane an interceptor. I search for an explanation. The only possible explanation that I can see might be found in the statutory definition of “intercept” contained in NRS 179.430. The statute■ defines “intercept” as the “aural acquisition of the contents of any wire or oral communication through the use of an electronic, mechanical or other device or of any sending or receiving equipment.” The legislation in question refers to “aural acquisition” by means of “electronic, mechanical or other device or of any sending or receiving equipment.” The clear image here is that of using an electronic or mechanical evesdropping “device” by a third, non-participating party, otherwise the very act of talking on a telephone, an electronic device, would be an “aural acquisition” and would subject the speaker to liability. To say that one “aurally acquires” a conversation is to say that one actively obtains access to the conversation, not that one was merely passively listening to what the other party to a conversation was saying. To say that “aural acquisition” means the active use of devices to intercept the communications of others is a logical and consistent way of reading the statute. I cannot *1185 believe that the legislature intended a meaning of the word “intercept” that was entirely inconsistent with the word’s dictionary meaning or that would produce the absurd result of making all telephone conversations illegal. In sum, I find nothing in NRS 179.430 that would alter the traditional and accepted meaning of “intercept” or that would make the mere recording, electronically or manually, of a two-person conversation a criminal act.
The majority is mistaken in its interpretation of the word “intercept” and wrong in holding that recording a telephone conversation in which the recorder is a participant is a criminal act. It is not a violation of NRS 200.620 to tape-record a telephone conversation in which one is a participant; therefore, I dissent.

 Justice Shearing is, of course, correct that ignorance of the law is not an excuse for criminal conduct. The “willfulness of the offending party” is, however, a factor that must be taken into account by a district court in exercising its equitable powers to dismiss an action for abusive litigation practices. Young v. Johnny Ribeiro Building, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990). Although Mr. Lane intentionally tape-recorded the conversations at issue, he did not, as the majority correctly recognizes, intentionally — or “willfully” — break the law in doing so. Accordingly, it was not proper for the court to dismiss this case.

 Not only is the majority opinion illogical, it is unsupported by authority. The majority inappropriately relies on the case of Rupley v. State, 93 Nev. 60, 560 P.2d 146 (1997). In Rupley, a police officer unlawfully “acquired,” that is to say intercepted, “wire communications between Rupley and [a third person] an informant by attaching a suction-cup device to the receiver of the informant’s telephone.” Id. at 61, 560 P.2d at 147. The police officer was clearly acquiring, seizing, intercepting — however one wants to put it — the conversation of two other parties, without the knowledge of one of the parties. The case cited by the majority has absolutely nothing to do with the issue now before the court.

 The dictionary definition of “intercept” is “1. [t]o take or seize by the way, or before arrival at the destined place; to stop or interrupt the progress or course of .... 2. [t]o stop or prevent (from doing something); to hinder. 3. [t]o interrupt communication or connection with.” Webster’s New International Dictionary 1293 (2d ed. 1948).