167 N.J. Super. 271 (1979)
400 A.2d 830
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MICHAEL McDERMOTT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1979.
Decided March 29, 1979.
*272 Before Judges LYNCH, CRANE and HORN.
Mr. L. Gilbert Farr, Assistant Prosecutor, argued the cause for appellant (Mr. David Linett, Prosecutor, attorney).
Mr. Stephen E. Klausner argued the cause for defendant.
Mr. Wayne J. Martorelli, Deputy Attorney General, argued the cause as amicus curiae (Mr. John J. Degnan, Attorney General, attorney; Mr. Lowell Espey, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by HORN, J.A.D.
On August 23, 1978 we granted leave to the Prosecutor of Somerset County to appeal a suppression-of-evidence order entered by the trial judge on July 24, 1978. Subsequently, on October 18, 1978, we authorized *273 the Attorney General to participate, argue and file a brief as amicus curiae on behalf of the State. We narrate the events leading to this appeal.
On January 25, 1978 a Somerset County grand jury indicted defendant McDermott on two counts. The first charged that on October 9, 1977 he had possession of marijuana in excess of 25 grams, contrary to N.J.S.A. 24:21-20a(4). The second charged that on the same date defendant distributed marijuana to an undercover officer, contrary to N.J.S.A. 24:21-19a(1).
Defendant thereafter made a timely motion to suppress certain evidence on the ground that the evidence was tainted as the result of an illegal interception of a telephone call made by an informer and overheard on an extension telephone by a municipal detective. Specifically, defendant contended that: (1) the call was overheard on the extension telephone without the consent of the informer; (2) the prosecutor of the county had not made the determination required by the New Jersey Wiretapping and Electronic Surveillance Control Act (act), N.J.S.A. 2A:156A-4(c)[1], and (3) as we interpret the language of the motion, that a suction-cup induction-coil recording apparatus was attached to the extension telephone.[2]
At the outset it may be assumed that defendant's contention that the informer did not consent to the detective's listening to the conversation over the extension telephone has been abandoned. The evidence established that the informer did consent.
Following an evidential hearing on said motion, the trial judge entered the suppression order which is the subject of this appeal. It directed that
*274 * * * the initial telephone call placed on October 9, 1977 by the informant to the defendant and the meeting between defendant and members of the Franklin Township Police Department and/or the Somerset County Prosecutor's Investigators staff which was a direct result of said telephone call, and any evidence derived therefrom, be and hereby is suppressed, and such evidence shall not be received in evidence at any trial, hearing or proceeding.
The evidential hearing disclosed that an informer was willing to cooperate with the police to apprehend defendant, who had earlier sold marijuana to the informer. On October 9, 1977 at about 3 P.M., under arrangements with the police the informer called defendant from a desk telephone in the Franklin Township police headquarters and arranged for a "friend" (who was to be Franklin Township Detective Racz) to purchase marijuana from defendant. A meeting was arranged with defendant for 8 P.M. that evening. This conversation was monitored and recorded by Detective Racz by the use of an extension telephone in the police headquarters, to which was attached a suction-cup induction coil, which in turn was plugged into a recorder.
Before the scheduled meeting was held with defendant, a county detective, acting in cooperation with the township police department, submitted a written request to the county prosecutor for "consensual interception authorization" pursuant to N.J.S.A. 2A:156A-4(c). The request in part stated:
Factual basis for request: Informant to place telephone call to Mike McDermott to order a quantity of Marijuana. Informant has purchased marijuana from McDermott in the past and as recent as one day ago. Informant was told by McDermott when the informant wanted to purchase a quantity of marijuana to call him first at telephone # 828-5601.
It appears from the notation on the prepared form of request that the prosecutor approved the request by telephone at 8:20 that same evening. Thereafter, we are told that another telephone call was made by the informer to defendant, *275 which resulted in a meeting at about 10 P.M., during which defendant sold marijuana to Detective Racz.
For convenience we hereinafter refer to the Attorney General and the prosecutor jointly as "appellants." Their respective arguments for overturning the challenged order parallel each other. Both urge that the action of Detective Racz in listening to the first conversation by use of an extension telephone was not an "interception" within the meaning of the act and that if it is considered to be an interception, then it falls within the exception of § 2(d)(1), i.e., that an extension telephone is not an "intercepting device" and the use of the recording mechanism did not alter that fact.
The first issue which we address is whether the use of the extension telephone was an "interception," in violation of our act. State v. Christy, 112 N.J. Super. 48 (Cty. Ct. 1970), referred to approvingly by our Supreme Court in State v. Dye, 60 N.J. 518 (1972), relates the history of our act. As stated therein, it was patterned after Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq.[3] See also, State v. Vizzini, 115 N.J. Super. 97, 100 (App. Div. 1971).
The governing law before the enactment of the Omnibus Crime Control Act and our act was generally embodied in the Federal Communications Act of 1934, 47 U.S.C.A. § 605, and N.J.S.A. 2A:146-1 (since repealed, L. 1968, c. 409, § 27). State v. Vizzini, supra. Neither of these statutes was violated by one who listened to a telephone conversation by means of a regularly used telephone extension with the consent of one of the parties to the conversation. Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); State v. Carbone, 38 N.J. 19 (1962). The following statement in the majority opinion of the late Chief Justice Warren in Rathbun is widely quoted:
*276 Common experience tells us that a call to a particular telephone number may cause the bell to ring in more than one ordinarily used instrument. Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. Consequently, one element of Section 605, interception, has not occurred. [355 U.S. at 111, 78 S.Ct. at 164]
Following the holding of Rathbun, Chief Justice Weintraub said in Carbone:
So long as the physical integrity of the established line is not violated, there is no interception within the meaning of section 605 [of the Federal Communications Act of 1934]. [38 N.J. at 26]
The majority of the cases held similarly. See Annotation, "Telephone Communication  Interception," 9 A.L.R.3d 423, § 5 at 434 et seq.; Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
The foregoing history was recounted to demonstrate that merely listening to another's telephone conversation in the related circumstances was not considered unlawful under prior law. We now turn to the provisions of our present wiretap act. Under both statutes (§ 2(c) and 18 U.S.C.A., § 2510[4]), "intercept" is defined to mean:
* * * the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device.
"Intercepting device" is defined in § 2(d)[4] as follows:
d. * * * any device or apparatus that can be used to intercept a wire or oral communication other than
*277 (1) Any telephone or telegraph instrument, equipment or facility, or any component thereof, furnished to the subscriber or user by a communication common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or being used by a communication common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties; * * *[5]. [Emphasis supplied]
It will be seen that without the use of an electronic mechanical or other device (intercepting device) an overhearing is not an "intercept" within the meaning of the act. Cf. State v. Gora, 148 N.J. Super. 582, 590-591 (App. Div. 1977). An extension telephone regularly installed "and being used * * * by an investigative or law enforcement officer in the ordinary court of his duties * * *" is not an intercepting device within the intent and purpose of either the federal statute, 18 U.S.C.A. § 2510(5), or our own statute, § 2(d)(1).
United States v. Harpel, 493 F.2d 346 (10 Cir.1974), interpreted the provision of the Omnibus Crime Control Act, 18 U.S.C.A. § 2510(5), similarly. That case did not involve overhearing by police, but the court said:
* * * [T]here is no interception if the acquisition of the contents of the communication is accomplished through telephone equipment used in the ordinary course of business. [at 351]
As we view it, the necessity of there being consent by one of the parties to the conversation which is overheard by another by means of an extension telephone within the intent and meaning of U.S.C.A. § 2510(5), and § 2(d)(1) of our act is to comply with Fourth Amendment requirements, although consent of a party is a requisite under § 4(b), (c) *278 (quoted infra) and (d) and 18 U.S.C.A. § 2511(c) and (d), which permit "intercept[s]" in the instances stated therein.
Thus, it has been declared that Fourth Amendment considerations as applied to the State are not involved where the overhearing is with the consent of one of the parties to the conversation. Holmes v. Burr, 486 F.2d 55 (9 Cir.1973); United States v. Keen, 508 F.2d 986 (9 Cir.1975). See American Bar Association Standards Relating to Electronic Surveillance, General Commentary, 14 (Approved Draft, 1971), and Rathbun v. United States, supra.
Defendant contends, nonetheless, that the subject conversation was overheard contrary to our act. He draws our attention to § 4, which insofar as relevant provides:
It shall not be unlawful under this act for:

* * * * * * * *
c. Any investigative or law enforcement officer or any person acting at the direction of an investigative or law enforcement officer to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made unless the Attorney General or his designee or a county prosecutor within his authority determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception; * * *.
Although at first blush what we have stated above appears to be inconsistent with the provisions of § 4(c), we find that it is not. Section 4 permits "interceptions" under the circumstances stated therein. Since the use of a regularly installed extension telephone by a police officer is not an interception within the meaning of the act, § 4 has no application to same. If the police officer were to use another means of overhearing a telephone conversation or use an extension telephone which does not come within the definition of § 2(d)(1), then § 4(c) would apply.
Defendant also contends that the use of the coil suction-cup recording device rendered the overhearing of the conversation *279 under the circumstances to be in violation of the act. The trial judge so held in a supplemental letter opinion which he filed on August 4, 1978. The judge referred to the 1978 amendment of § 2(d), which we mention in note 4, and viewed the amendment as evidencing the legislative intention that where an induction coil is used, an interception under § 2(c) is involved. We do not agree with defendant's contention or the judge's interpretation.
The Senate Judiciary Committee Statement pertaining to this amendment explains:
Section 1 of the bill makes clear that an induction coil, which is a microphone attached to a telephone by means of a suction cup, falls within the meaning of "intercepting device" as defined [in § 2(d)].
As already noted, this amendment was not effective when the subject conversation was overheard and recorded. We are unable to adopt the trial judge's view that because the Legislature adopted the amendment in 1978 that amendment was indicative of the legislative intent in 1977. There are too many cases holding that under the circumstances of this case the recording of the conversation so overheard is not an interception.
The federal cases under the applicable provisions of the Omnibus Crime Control Act maintain that the recording of a conversation is immaterial when the overhearing is itself legal. United States v. Harpel, supra at 350; Smith v. Cincinnati Post Times-Star, 475 F.2d 740 (6 Cir.1973). Cf. Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), decided before the Omnibus Crime Control Act. United States v. McLeod, 493 F.2d 1186 (7 Cir.1974), held that recording of a conversation by a law enforcement agent without the use of a listening device did not contravene the provisions of the Omnibus Crime Control Act because the recording did not constitute an interception. By analogy, if the overhearing by use of the extension telephone is an overhearing without an intercepting *280 device by reason of § 2(d)(1), the use of the recording apparatus to record what is lawfully overheard does not convert the overhearing or recording into a proscribed interception.
We also observe that both the federal statute, 18 U.S.C.A. § 2518(8)(a), and our own act, § 14, direct that "[a]ny wire or oral communication intercepted in accordance with this act shall, if practicable, be recorded by tape, wire or other comparable method."[6]United States v. Harpel, supra at 350.
In our own State we have heretofore held that recording of telephone conversations by means of a tape recorder and special adapter attached to a telephone receiver did not constitute an "intercept" under § 2(c) of our act. State v. Gora, 148 N.J. Super. supra at 509. See also, State v. Vizzini, supra, decided before the adoption of our Act.
We need not determine on the present record the legislative intent in adopting the 1978 amendment to § 2(d). We are satisfied that under the law which prevailed when the subject conversation took place the overhearing and recording thereof by Detective Racz were not a proscribed interception. Consequently, they did not require the advance approval of the prosecutor under § 4(c). Since the police sought the prosecutor's determination that there existed a "reasonable suspicion that evidence of criminal conduct will be derived * * *," it is obvious that the township police believed that the prosecutor's approval was necessary. Of course, we are not bound by this misunderstanding.
Finally, we refer to § 4.1 of Standards Relating to Electronic Surveillance, op. cit., which reads as follows:
The surreptitious overhearing or recording of a wire or oral communication with the consent of, or by, one of the parties to the *281 communication should be permitted, unless such communication is overheard or recorded for the purpose of committing a crime or other unlawful harm.
This standard appears to rest upon the proposition that "the function of a criminal trial is to seek out and determine the truth or falsity of the charges brought against the defendant." Lopez v. United States, supra, 373 U.S. at 440, 83 S.Ct. at 1388. As stated in Commentary to §§ 4.1 and 4.2 of the Standards Relating to Electronic Surveillance, at 126:
* * * No man knows better, however, the fallibility of human testimony than that man who is trained in the law. The prospect that science through electronic surveillance techniques can provide us with evidence not subject to the frailties of human nature ought, therefore, to be applauded. The use of such techniques in this area, in short, should be encouraged, not discouraged, and they should not be encumbered with administrative procedure. Where trained investigators are conducting routine interviews, reliance may properly be placed in the agents' memories aided by notes taken contemporaneously. See Campbell v. United States, 373 U.S. 487 [83 S.Ct. 1356, 10 L.Ed.2d 501] (1963). But where informants, whose credibility may be suspect, are used, see, e.g., Osborn v. United States, 385 U.S. 323 [87 S.Ct. 429, 17 L.Ed.2d 394] (1966), where victims of crime are engaged in key conversations with the perpetrators themselves, see, e.g., Rathbun v. United States [supra], or where the investigators as such are individually involved and their credibility will be a significant factor in the subsequent trial, see, e.g., Lopez v. United States [supra], every effort should be made to record the conversations through the best available means. For a recording will reproduce the very words spoken with all the added significance that comes from inflection, emphasis and the other aspects of oral speech. See State v. Reyes, 209 Ore. 595, 308 P.2d 182 (1957). The goal of finding the truth in the criminal trial demands no less. The defendant, too, has a stake in the best evidence being presented to the court and jury. Thus, recording as such "involves no `eavesdropping' whatever in any proper sense of that term." Lopez v. United States [supra [373 U.S.] at 439 [83 S.Ct. 1381]]. It should not be unthinkingly placed in the same category with wiretapping or bugging. Williams, The Wiretapping-Eavesdropping Problem: A Defense Counsel's View, 44 Minn. L. Rev. 855, 866 (1960); Schwartz, On Current Proposals to Legalize Wiretapping, 103 U. Pa. L. Rev. 157, 166-67 (1954). Overhearing too, is not eavesdropping. "When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk *282 that the man to whom he speaks will make public what he has heard. * * * It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording or transmitting to another." Katz v. United States [supra [389 U.S.] at 363 [88 S.Ct. 507] n. [*]] (White J. concurring).
Concluding as we do that in the instant case the conduct of the police in overhearing by the extension telephone and the recording of the subject conversation was not proscribed by either our act or the federal statute, 18 U.S.C.A. § 2510 et seq., and that same did not require any advance approval or determination by the prosecutor, the order entered in the trial judge is reversed. We remand the cause to the trial court for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Hereinafter all references to said act will omit the title and chapter and use only the section numbers.
[2] Defendant cited 47 U.S.C.A. §§ 601 and 605 (Federal Communications Act of 1934), but this act is not mentioned in any of the briefs filed in this court.
[3] Hereinafter, "Omnibus Crime Control Act."
[4] The corresponding section of the federal act, 18 U.S.C.A. § 2510(5), differs slightly. Instead of defining "intercepting device" it defines "electronic, mechanical, or other device." The definitions are precisely the same. We attach no significance to this difference.
[5] Subsection 2(d) was amended in 1978 to read: "`Intercepting device' means any device or apparatus including an induction coil, that can be used to intercept a wire or oral communication other than * * *." L. 1978, c. 51.
[6] The quotation is from a portion of § 14. The federal statute, 18 U.S.C.A. § 2518(8)(a), is slightly and insignificantly different. These statutes clearly indicate that "recording" was not the same as "overhearing" or "intercepting."