STATE of Minnesota, Respondent,

v.

Barry Mitchell PAGE, Appellant.

No. C6–85–1964.

Court of Appeals of Minnesota.

April 29, 1986.

Review Denied June 30, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and LANSING and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant was convicted of aggravated robbery, second degree assault, third degree assault, and unauthorized use of a motor vehicle. He appeals, claiming the trial court improperly admitted evidence against him and allowed improper conduct by the prosecutor. We reverse and remand for a new trial.

## FACTS

Norman Malterud and appellant Barry Page lived near one another in Minneapolis. The two became acquainted, although there is no indication that they became close friends.

At around 11 p.m. on March 10, 1985, appellant entered Malterud's apartment building, which is protected by a security system. Appellant buzzed Malterud's apartment. After answering the signal and learning it was appellant who sought entrance, Malterud activated the electronic device to unlock the security door. However, appellant never came up to the apartment. Malterud then observed appellant from a window, walking towards his home.

At approximately 2 a.m., Malterud was awakened by the security buzzer. He answered and discovered that appellant was again in the lobby seeking entrance. Malterud unlocked the security door and opened the door to his apartment. Moments later, appellant and Kemp Stanford, a friend of appellant's, entered the apartment.

Appellant apparently went to Malterud's apartment to settle a debt between the two. Malterud claimed that appellant owed him money and that appellant had told Malterud he would pay him on the evening of March 10. Appellant claims that Malterud owed him money and that he went to Malterud's apartment on March 10 to collect it.

After appellant and Stanford entered Malterud's apartment, one of the two pulled a gun and hit Malterud on the head, rendering him unconscious. Malterud did not know who hit him. Appellant testified that Stanford used the gun and that appellant was surprised that this happened. Peter Ern, a house guest of Malterud's, was awake during the incident, although he did not leave the bedroom where he had been sleeping. He told investigating police officers that he looked out from his room, saw a black man with a gun, and saw that man hit Malterud with the gun. Appellant is black and Stanford is white. After witnessing the incident, Ern hid behind the bedroom door.

After the assault on Malterud, appellant and Stanford dragged Malterud into the bedroom where Ern was hiding. At some point, appellant struck Ern in the face and fractured his cheekbone. Ern told police he was struck when he refused to lie down on the floor. Appellant testified at trial that he struck Ern reflexively and in self-defense when Ern jumped appellant from his hiding place behind the door.

Before leaving the apartment, appellant and Stanford bound Malterud and Ern and tore the telephone from the wall. Appellant claimed at trial that he took nothing from the apartment and that he was unaware that Stanford had taken anything. Malterud reported that he was missing a

key ring and several pieces of jewelry, including two rings he said appellant had given to him as collateral for the debt.

The police arrived shortly after appellant and Stanford left. After taking the victims' statements and securing medical assistance for them, the officers went to appellant's nearby residence. Craig Knopick, appellant's roommate, responded to their knock on the door. The police asked for appellant, but Knopick said he was not there. The police then entered the apartment. The officers testified at trial that Knopick gave them permission to enter, but Knopick testified that the officers ignored his demand that they obtain a search warrant. He said the officers told him they did not need a warrant.

The police searched the apartment but did not find appellant. While they were still in the apartment, the telephone rang. Knopick answered the telephone, and the officers listened on an extension. There is no evidence that the officers first received Knopick's permission to listen to the phone conversation. The caller asked, "Is it bad up there?", and Knopick replied, "What did you say?" The party repeated, "Is it real bad up there?" The caller then hung up. The officers claimed that Knopick told them the call was from appellant. Knopick denied this at trial.

One week later, Malterud discovered his car was missing. He reported the theft to the police. The next day, appellant was apprehended for speeding; he was driving Malterud's car. He claimed at the time he was arrested that Stanford had stolen the car. He said that he had confronted Stanford, got the keys from him, and was returning the car to Malterud at the time of his arrest.

Appellant was charged with aggravated robbery, second degree assault of Malterud, third degree assault of Ern, and unauthorized use of Malterud's motor vehicle.

The State claimed at trial that Ern, a victim of one of the charged assaults and a resident of Switzerland, was unavailable to testify at the time of trial because he had returned to his homeland. The trial court admitted Ern's statements to the police, over appellant's objections, under the "excited utterances" exception to the hearsay rule.

Having being convicted of all charges, Page appeals.

## ISSUES

1. Was it reversible error to admit the hearsay statements of Peter Ern?

2. Did the prosecutor improperly comment upon other charges that could have been brought against appellant?

3. Did the police listen unlawfully to the telephone conversation between Knopick and the late-night caller?

4. Did the trial court properly allow the prosecution to impeach appellant with prior convictions?

## ANALYSIS

### 1. Admission of Hearsay Evidence

The trial court found that statements made by Peter Ern to the police were properly admitted into evidence, under the excited utterance exception to the hearsay rule. *See* Minn.R.Evid. 803. Rule 803 states in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

*Id.*

The police officer who interviewed Ern testified that after the police called for an ambulance they "attempted to calm people down in order to gather the information as to what had transpired." The officer added:

This took quite a little time. And finally we were able to get both parties calmed down and give us information as far as

the parties that had come into the apartment and what exactly had transpired.

■ We will not lightly set aside a trial court's evidentiary ruling. *See State v. Brouillette*, 286 N.W.2d 702, 707 (Minn. 1979). Whether a statement may be admissible under the excited utterance exception to the hearsay rule "rests in the sound discretion of the trial court." *State v. Taylor*, 258 N.W.2d 615, 621 (Minn.1977). Although we are deferential to the trial court's exercise of discretion, we cannot agree that the interview statements of Ern were excited utterances to the police.

Utilizing the terminology employed in the 1977 evidence rules, the question here is whether it can be said that the declarant was still "under the stress of excitement" caused by his injury and the events he witnessed. *See* Minn.R.Evid. 803(2). Advisory committee comments to Rule 803 explain the standard used for declarations under stress:

> [T]he declarant must be under a sufficient aura of excitement caused by the event or condition to insure the trustworthiness of the statement.
>
> The rationale stems from the belief that the excitement caused by the event eliminates the possibility of conscious fabrication, and insures the trustworthiness of the statement.

Committee Comment, Minn.R.Evid. 803.

The record includes no direct statement of the trial court explaining its hearsay ruling. However, when asked about the scope of the ruling, the court observed that interviews at the Malterud apartment were covered, but that "once they got to the police headquarters the excitement [was] gone." The ruling and this explanation occurred during a conference of the court and counsel *in limine*.

■ So long as the stress of excitement continues, and until the declarant has a chance to reflect on the facts, the person's statements are admissible. *State v. Berry*, 309 N.W.2d 777, 783 (Minn.1981). Here the evidence belies the notion of continued stress of excitement. Peter Ern was injured and had been excited. Blood had been trickling from his nose and his injury had not yet been treated. However, the only evidence about Ern's emotions was the testimony of the officer who interviewed him. The officer said that Ern was calmed down, that the interviewer had worked at getting him calmed, and that this effort took "quite a little time." This evidence demonstrates that the declarant was calm and that the opportunity for reflection arose. There is no room here as in *Berry* to observe that Ern's interview "clearly" occurred during the stress of excitement and before the opportunity for reflection. *Id.*

Exceptions to the hearsay exclusion are premised on the recognition of the trustworthiness of certain hearsay declarations. The advisory committee comments on Rule 803(2) declare that the concept of stress of excitement was designed to allow proof of comments where trustworthiness could be ensured. Here we must be especially jealous of the standard of trustworthiness, recognizing that Ern was the victim of one of the assault charges being tried. In addition, Ern was the only witness to identify the person who allegedly struck Malterud with a weapon, an act explaining a second trial charge of assault and a charge of an aggravated degree of robbery.

The trustworthiness of testimony about the Peter Ern interview is negated here by the opportunity of Ern for reflection. We are mindful as well that the supreme court has recognized a traditional view that *ex parte* statements made during police questioning are "inherently untrustworthy." *State v. Hansen*, 312 N.W.2d 96, 103 (Minn.1981). While police interviews were also involved in *Berry*, we note the clear evidence there that the declarant remained distraught and the fact that her statements to police were consistent with comments first given to a family relative. *Berry*, 309 N.W.2d at 779, 780. In addition, the trustworthiness of statements challenged in *Berry* was enhanced by the fact that the declarant did testify at trial and that the declarant in *Berry* testified "with specifici-

ty" during an omnibus hearing, in sharp contrast with Peter Ern, who has never testified in this case. *See id.* at 782.

■ There are also constitutional implications involved in the admission of Ern's statements. The sixth amendment guarantees an accused the right to confront his accusers. *See* U.S. Const., amend. VI. The sixth amendment is applicable to the states under the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965). The right of confrontation is also a fundamental right under the Minnesota Constitution. *State v. Black*, 291 N.W.2d 208, 213 (Minn.1980). The courts have a duty to zealously protect an accused's right of confrontation. *Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011, 1021–22, 25 L.Ed.2d 287 (1970).

■ Decisions on the right of confrontation have involved accommodation of competing concerns for face-to-face confrontation and cross-examination on the one hand and effective law enforcement and orderly proof of facts on the other. *Ohio v. Roberts*, 448 U.S. 56, 63, 64, 100 S.Ct. 2531, 2537, 2538, 65 L.Ed.2d 597 (1980). When necessary, certain trustworthy declarations can be received without offending the Constitution. *Id.* at 65, 100 S.Ct. at 2538–39. "Principally" this has led to recognition of the validity of certain hearsay exceptions. *Id.* at 66, 100 S.Ct. at 2539.

■ The United States Supreme Court has not chosen to say that all hearsay exceptions are valid for constitutional purposes, but certain "firmly rooted" exceptions are recognized, those resting on "such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Id.* at 64–66, 100 S.Ct. at 2538–39 (citation omitted). Because we conclude here that declarations of Peter Ern were not excited utterances, they do not escape constitutional objection as do some statements coming within an exception to the hearsay rule. Nor do we find other theories to spare the admission from

a conclusion that it violated the sixth amendment. It is only the trustworthiness of statements that puts them outside of the right of confrontation, and we have analyzed earlier the untrustworthy characteristics of a statement made during police questioning by a victim witness who has been calmed, where the witness is never made available for questioning.

Under *Ohio v. Roberts,* even a trustworthy statement is admissible only if this is necessary because the declarant is unavailable to testify. *Id.* at 65, 100 S.Ct. at 2538–39. There is disagreement here as to whether Ern could in fact have been available for examination by the parties. Although Ern returned to Switzerland shortly after the incident, he evidently returned to Minneapolis in April 1985, one day after calling a Minneapolis police officer to announce he was coming; although Ern was again interviewed by the police while stopping briefly in the city, appellant was never notified and never had an opportunity to question Ern. In addition, it was indicated that funds were available for Ern's transportation to Minneapolis. Reasons why Ern said he "could not" return for a prompt trial were not disclosed to the trial court. Because we have concluded that Ern's declarations were inadmissible under rules of evidence, and because we see constitutional implications in their untrustworthiness, we need not reach a further conclusion here on whether Ern was available to testify.

As we noted initially, we will not unnecessarily question the trial court's exercise of discretion on the admissibility of out-of-court statements. *Taylor*, 258 N.W.2d at 621. We conclude, however, that it was clear error to receive evidence of otherwise untrustworthy declarations made by a victim-witness who was calmed such that an opportunity for reflection had arisen.

We observe that the trial court reached a decision on the characteristics of Peter Ern's declarations during a proceeding *in limine* without the taking of evidence. In this same setting the court reached a decision on the unavailability of Ern. *Cf. Ohio*

*v. Roberts,* 448 U.S. at 59, 60, 100 S.Ct. at 2535–36 (decision on unavailability made after *voir dire* hearing on admissibility of prior testimony). When admissibility of evidence depends on a factual determination, the trial court in some situations may need to hear testimony. *Cf.* Committee Comments, Minn.R.Evid. 104 (interests of judicial time and expense make it permissible to act on offers of proof). Here the evidence of Peter Ern's emotional state when interviewed surfaced during a jury trial, after the question of admissibility had been decided. Evidence was never received to indicate whether or not Ern was available to testify. The choice to hear firsthand testimony in situations like this may avoid errors requiring a second trial.

### 2. Prosecutorial Misconduct

During the course of closing arguments at trial, the prosecuting attorney, after outlining the evidence presented at trial, made the following statement:

> Members of the jury, based upon all of this evidence, the defendant was charged with aggravated robbery[,] * * * assault in the second degree[,] * * * assault in the third degree[,] * * * [a]nd * * * unauthorized use of a motor vehicle * * *. We did not charge him with theft because we don't have any witnesses that can tell you that he walked into that garage, took that car and took it and intended to keep it and not give it back. * * * He might very well have also been charged with robbery on Mr. Ern, but Mr. Ern was unavailable to testify because he lives in Switzerland.

Appellant made no objection to the statement.

Appellant argues that these statements by the prosecutor were highly improper and denied him a fair trial. The State argues that appellant waived this claim by failing to object to the comments.

 It is improper conduct for a prosecutor to refer to a witness who was not called. *State v. Shupe,* 293 Minn. 395, 396–97, 196 N.W.2d 127, 128 (1972). Furthermore, it is improper during closing arguments in a criminal case to make reference to charges that were not brought against the defendant. *See State v. De-Pauw,* 243 Minn. 375, 68 N.W.2d 223 (1955); 1 ABA Standards 3–5.9 (2d ed. 1982).

 A complete analysis of this issue would require us to assess the seriousness of the misconduct and the effect of appellant's failure to object to the misconduct at trial. If it was serious, then the misconduct is reversible error unless it was harmless beyond a reasonable doubt. *State v. Caron,* 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). Appellant's failure to object means that he is not entitled to relief on appeal unless the trial court's failure to intervene constituted fundamental error. Minn.R.Crim.P. 31.02; *State v. Duemke,* 352 N.W.2d 427, 432 (Minn.Ct. App.1984) (contentions on trial procedure cannot be introduced on appeal unless they concern matters of fundamental law and substantially prejudice appellant's rights). We need not discuss the issue in greater detail or decide whether the misconduct constituted a separate ground for a reversal of the conviction; we are persuaded that the misconduct was sufficiently serious, taken together with the wrongful admission of hearsay evidence, to entitle appellant to a new trial.

### 3. Eavesdropping by the Police

Eavesdropping is unlawful under both federal and state law, unless an exception to the eavesdropping rule applies. *See* 18 U.S.C. § 2511 (1982); Minn.Stat. § 626A.02 (1984). The federal rule makes it unlawful to "intercept" a "wire or oral communication." 18 U.S.C. § 2511(1). "Intercept" means:

> [T]he aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device.

*Id.* § 2510(4). "Electronic, mechanical or other device" means:

> [A]ny device or apparatus which can be used to intercept a wire or oral communi-

cation other than—(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties.

*Id.* § 2510(5)(a).

The Minnesota law proscribing eavesdropping is substantially similar to the federal law. *See* Minn.Stat. § 626A.02. It also deals with interception of an oral communication by use of an "electronic, mechanical, or other device." *Id.* § 626A.02, subd. 1(b). The definitions of terms track with the federal definitions. *See* Minn. Stat. § 626A.01, subds. 3, 5, 6.

The police in this case knocked on the door of Craig Knopick's apartment after the assault at Malterud's apartment, suspecting that appellant might be there. They searched the apartment, under protest by Knopick, but did not find appellant. The telephone rang while the police were present, and one of the officers directed Knopick to answer it. As Knopick picked up the receiver, the officer picked up the receiver of an extension telephone. There is no indication that there was express consent by Knopick to the officer's eavesdropping.

■ There is no question that the officer's eavesdropping would have been proper if there had been consent from Knopick to listen to the conversation on the extension. *See* 18 U.S.C. § 2511(2)(c); Minn. Stat. § 626A.02, subd. 2(c). There was no such consent in this case, however; Knopick merely acquiesced to the officer's directions. *See State v. Mitchell*, 285 Minn. 153, 158–59, 172 N.W.2d 66, 69–70 (1969) (State does not satisfy burden of proving consent merely by stating that the consenting party acquiesced).

Since there was no consent, we must determine if there was an "interception" as contemplated by the statutes. If the eavesdropping did not involve the use of an "electronic, mechanical or other device," then no interception occurred and the officer's actions were proper. *See* 18 U.S.C. § 2510(4); Minn.Stat. § 626A.01, subd. 5.

A telephone extension, when used for eavesdropping by an investigative or law enforcement officer in the ordinary course of business, does not constitute an interception. 18 U.S.C. § 2510(5); Minn.Stat. § 626A.01, subd. 6(a). Thus, law enforcement officers are insulated from the proscription against eavesdropping, so long as the eavesdropping occurred in the ordinary course of their duties, which includes the investigation of crimes. This eavesdropping is an ordinary tool of law enforcement officers and is consistent with public policy. This is inherent in the statutory scheme at both the federal and state level. *See* 18 U.S.C. § 2510(5); Minn.Stat. § 626A.01, subd. 6(a).

In this case, the police utilized a telephone extension in furtherance of the investigation of a case of assault and robbery. The use of the telephone extension was in the ordinary course of police business. Thus, the use of a telephone extension in this case was not an interception through any "electronic, mechanical or other device," and the police use of it did not violate the proscriptions against eavesdropping.

This decision is one of first impression in Minnesota, so reference to Minnesota caselaw is not helpful. Our reasoning, however, is consistent with the reasoning of other jurisdictions that have considered similar questions. *See, e.g., State v. McDermott*, 167 N.J.Super. 271, 400 A.2d 830 (1979). In that case, the police listened to and recorded a telephone conversation of the defendant via a telephone extension. Under the New Jersey eavesdropping statute, which is similar to Minnesota's, the New Jersey Superior Court found that the police conduct did not constitute an "interception" because the police had utilized a

"regularly installed extension telephone." *Id.* at 277, 400 A.2d at 834. Since the telephone was not installed specifically for the purpose of eavesdropping, the court found that the use of the telephone occurred within the ordinary course of business. *Id.* at 277, 400 A.2d at 833. The New Jersey reasoning is persuasive.

This is not to say that the law categorically condones the officer's actions in this case. It is highly desirable that the police obtain the consent of one party to the communication before eavesdropping by means of a telephone extension. Furthermore, we note that the statute limits the rule to cases in which a telephone is used; the use of a wiretap, for example, even though used to listen to a telephone conversation, would not constitute the use of a telephone and would require the proper authorization from the attorney general. *See* Minn.Stat. § 626A.05. Under the facts presented here, the police used the telephone extension in the ordinary course of business and the eavesdropping did not constitute an interception as defined by statute.

4. Impeachment by Prior Convictions

Between 1975 and 1983, appellant had been convicted of attempted felony theft, unauthorized use of a motor vehicle, aggravated robbery, felony theft, and unlawful possession of a pistol. During the trial, the State asked that it be allowed to impeach appellant's testimony by use of these prior convictions. The trial court granted the request over the defense attorney's objection. The appellant claims the trial court erred by allowing the use of the prior convictions for impeachment.

■ Prior criminal convictions may be used to impeach testimony only if the crime:

(1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect, or

(2) involved dishonesty or false statement, regardless of the punishment.

Minn.R.Evid. 609(a). Since the appellant's prior convictions did not involve "dishonesty or false statement" but were punishable by "imprisonment in excess of one year," they were admissible for impeachment purposes only if the probative value of the prior convictions outweighed their prejudicial effect.

■ The Minnesota Supreme Court has developed and applied five factors for balancing the probative value and prejudicial effect of a prior conviction. These factors are:

(1) [T]he impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones,* 271 N.W.2d 534, 538 (Minn. 1978). If the prosecutor makes use of stale and irrelevant prior crimes, the result may be that the defendant would be denied a fair trial, and a new trial would be mandated. *Id.*

We must sustain a trial court's evidentiary ruling unless it is clear the trial court abused its discretion. *Brouillette,* 286 N.W.2d at 707. We are not convinced that the trial court abused its discretion in this case by allowing the prosecutor to impeach appellant's testimony with appellant's prior convictions, even though the convictions are similar to the charges here. The fact that the prior convictions do not involve any element of truth or veracity is not determinative of the issue. *Id.* Appellant's prior convictions have impeachment value because they allow the jury to see "the whole person" and thus better judge the truth of appellant's testimony. *Id.* Nor is the similarity between the prior convictions and the charges here determinative; rather, that is a consideration, one of five, that enters into the decisionmaking process. *See id.* (prior conviction for criminal sexual conduct in the third degree ad-

missible for impeachment when charge is criminal sexual conduct in fourth degree). The prior convictions were not stale and it was important here to determine the credibility of conflicting versions of fact.

### DECISION

Because the trial court improperly admitted the hearsay statements of Peter Ern in the State's case against appellant, a new trial is mandated. Fairness of the trial was further impaired when the prosecuting attorney improperly mentioned in closing argument witnesses who were not called and other charges that could have been brought. The trial court did not err by admitting telephone statements made while police were listening on an extension telephone. The trial court properly allowed the prosecutor to impeach appellant's testimony by use of appellant's prior convictions.

Reversed and remanded for new trial.