THE STATE OF NEVADA, Appellant, v. JOSE
NUNEZ REYES, Respondent.

No. 20559

March 28, 1991                                808 P.2d 544

[Rehearing denied May 2, 1991]

*Frankie Sue Del Papa*, Attorney General, Carson City;
*Dorothy Nash Holmes*, District Attorney, and *Gary Hatlestad*,
Deputy District Attorney, Washoe County, for Appellant.

*David Houston*, Reno, for Respondent.

## OPINION

By the Court, Steffen, J.:

This is an appeal from an order granting a motion to suppress
evidence obtained pursuant to a search warrant issued on the

basis of information confirmed through eavesdropping on an extension telephone by a police agent. The sole issue on appeal is whether the eavesdropping, occurring without the consent of all parties to the conversation, was authorized under Nevada law. We hold in the affirmative and reverse.

Nevada law prohibits the unauthorized interception of wire or oral communications. *See* NRS 200.620; NRS 179.410 to 179.515, inclusive. Under NRS 179.430 the term "intercept" is defined as "the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device or of any sending or receiving equipment." In pertinent part, NRS 179.425 defines "electronic, mechanical or other device" as "any device or apparatus which can be used to intercept a wire or oral communication *other than:* 1. Any telephone . . . instrument, equipment or facility, or any component thereof . . . (b) Being used by . . . an investigative or law enforcement officer in the ordinary course of his duties." (Emphasis added.)

In the instant case, an untested police agent/informant, under the direction of officers of the Washoe County Consolidated Narcotics Unit (CNU) used a police telephone to call a suspected drug dealer, Reyes, and arrange a buy. Because the officers knew that the informant's conversation with Reyes would be in Spanish, they took the reasonable precaution of having an interpreter listen to the conversation on an extension telephone. CNU agents did not want to risk the possibility of the untested informant either jeopardizing the lives of the officers or frustrating a lawful prosecution by means of an entrapment. We conclude that the conduct of the officers was both reasonable and lawful under the statutory latitude quoted above.

The State's position is consistent with that of other courts that have had occasion to consider the same issue. For example, in State v. Page, 386 N.W.2d 330 (Minn.Ct.App. 1986), police officers entered a suspect's apartment without a warrant and under disputed circumstances; the suspect's roommate was the only person present. While the officers were in the apartment, the telephone rang. The roommate was directed to answer the phone while the officers listened in on an extension. Because it is evident that the *Page* court's reasoning is applicable to the instant case, we quote from the ruling at length:

> *Since there was no consent,* we must determine if there was an "interception" as contemplated by the statutes. If the eavesdropping did not involve the use of an "electronic, mechanical or other device," then no interception occurred and the officer's actions were proper. *See* 18 U.S.C. §

2510(4); Minn.Stat. § 626A.01, subd. 5. A telephone extension, when used for eavesdropping by an investigative or law enforcement officer in the ordinary course of business, does not constitute an interception. 18 U.S.C § 2510(5); Minn.-Stat. § 626A.01, subd. 6(a). *Thus, law enforcement officers are insulated from the proscription against eavesdropping, so long as the eavesdropping occurred in the ordinary course of their duties, which includes the investigation of crimes. This eavesdropping is an ordinary tool of law enforcement officers and is consistent with public policy.* This is inherent in the statutory scheme at both the federal and state level. *See* 18 U.S.C. § 2510(5); Minn.Stat. § 626A.01, subd. 6(a).

In this case, the police utilized a telephone extension in furtherance of the investigation of a case of assault and robbery. The use of the telephone extension was in the ordinary course of police business. Thus, the use of a telephone extension in this case was not an interception through any "electronic, mechanical or other device," and the police use of it did not violate the proscriptions against eavesdropping.

This decision is one of first impression in Minnesota, so reference to Minnesota caselaw is not helpful. Our reasoning, however, is consistent with the reasoning of other jurisdictions that have considered similar questions. *See, e.g., State v. McDermott,* 167 N.J.Super. 271, 400 A.2d 830 (1979). In that case, the police listened to and recorded a telephone conversation of the defendant via a telephone extension. Under the New Jersey eavesdropping statute, which is similar to Minnesota's, the New Jersey Superior Court found that the police conduct did not constitute an "interception" because the police had utilized a "regularly installed extension telephone." *Id.* at 277, 400 A.2d at 834. Since the telephone was not installed specifically for the purpose of eavesdropping, the court found that the use of the telephone occurred within the ordinary course of business. *Id.* at 277, 400 A.2d at 833. The New Jersey reasoning is persuasive.

(Emphasis supplied.)

Reyes contends that *Page* is inapposite because unlike Nevada, Minnesota is a one-party consent jurisdiction. Reyes is wrong, however, because consent was not an issue in *Page*. Moreover, *Page* is directly applicable to the instant case, because the Minnesota statute, in pertinent part, is virtually identical to the Nevada statute. Thus, in Minnesota, as in Nevada, an exception to the requirement for properly authorized or consensual interception of

private communications exists when telephone equipment is used "by an investigative or law enforcement officer in the ordinary course of his duties." Furthermore, recognition of the exception in the instant case is far more compelling than in *Page.* Here, both the telephone used by the informant and the extension used by the interpreter were located at CNU offices and represented equipment regularly installed and used in the ordinary course of CNU's investigative and law enforcement duties. In *Page,* the telephones were in the suspect's apartment, being used without the approval of the suspect or his roommate in an effort to accomplish the successful apprehension and prosecution of the suspect.

The case of Adams v. State, 406 A.2d 637 (Md.App. 1979), involved a jurisdiction that required the consent of all participants to a private communication before an interception by consent was lawful. In *Adams,* the victim of a forcible sexual assault was asked to eavesdrop from an extension phone in the police station while the police, through pretext and deception, spoke to potential suspects on the telephone. During a conversation with the actual perpetrator of the crime, the victim was able to identify his voice, thereby enabling the police to identify and apprehend the suspect. The *Adams* court, citing to statutory provisions virtually identical to the Nevada provisions at issue here, stated:

> The issue posed by the appellant is whether an extension telephone used at the direction of a police officer, in a police station under the circumstances of this case, constitutes an "electronic, mechanical, or other device" as defined in the Act. If the extension was furnished to the subscriber by a communications common carrier in the ordinary course of its business and was used by the subscriber or user in the ordinary course of business or *if the extension was used by an investigative or law enforcement officer in the ordinary course of his duties, the telephone extension would not be an "electronic, mechanical, or other device" as defined in the Act, and there would be no interception.*

(Emphasis added.) Continuing, the court in *Adams* declared:

> We find that under § 10-401(4)(i)(b) [the exact counterpart to NRS 179.425(1)(b)], the specific exception for telephone extensions and other telephone components give broader latitude in the use of telephone instruments and components than is given for the use of other types of electronic surveillance equipment, such as hidden microphones or tape recorders.
>
> Clearly this section is not meant as a substantial loophole in the protection afforded by the Act. On the other hand, the

section must be interpreted as giving some authorization to an investigative or law enforcement officer to use telephone equipment without the express consent of both parties. It is clear that the term "ordinary course of his duties" must include only lawful and proper activities and it is both a limitation as well as a protection.

In the instant case, the police were investigating a crime and attempting to apprehend the perpetrator. The manner in which the extension telephone was used was lawful and proper and was in the ordinary course of police duties. Used in such a manner, the extension phone does not constitute an "electronic, mechanical, or other device." Further, since the extension phone was not a "device" within the meaning of the Act, there was no "interception" and hence no violation of the provisions of the Act.

The court in *Adams* also noted that the victim who was eavesdropping on the extension phone was also a police agent, acting at the direction of the police department. In the instant case, both the informant and the interpreter were acting as police agents. Clearly, as observed in *Adams,* if the interpreter had simply stood next to the informant, and had the informant hold the receiver away from his ear to allow the interpreter to listen, there would have been no violation of the statute. *See Adams,* 406 A.2d at 642 (citing United States v. McLeod, 493 F.2d 1186 (7th Cir. 1974)). This is but another reason why the exception written into the statute makes good common sense. The CNU officers were reasonably using a telephone extension to facilitate, in the ordinary course, their duties as investigative and law enforcement officers. As noted by the court in Ladrey v. Commission on Licensure to Practice, 261 F.2d 68 (D.C.Cir. 1958):

> No one is bound to answer a ringing telephone. If he does pick up the receiver, he is not required to talk to the outside caller. If he chooses to talk, he may well understand that the calling party, the original "sender" may have others listening to the conversation, whether in a group around the caller's telephone or on an extension attached to it.

*Id.* at 72-73.

The State also referred to State v. McDermott, 400 A.2d 830 (N.J.Super.Ct.App.Div. 1979), another case directly supportive of the State's position in the instant case. In reversing a lower court suppression order, the *McDermott* court stated:

> It will be seen that without the use of an electronic mechanical or other device (intercepting device) an overhearing is not an "intercept" within the meaning of the act. . . .

An extension telephone regularly installed "and being used . . . by an investigative or law enforcement officer in the ordinary course of his duties . . ." is not an intercepting device within the intent and purpose of either the federal statute, 18 U.S.C.A. § 2510(5), or our own statute, § 2(d)(1).

*Id.* at 833. Although New Jersey was a one-party consent state, the quoted ruling by the *McDermott* court construes the New Jersey counterpart to Nevada's statute without reference to consent and in a manner totally consistent with the State's position concerning the absence of an unlawful eavesdropping in instances where a telephone or telephone extension is used by an investigative or law enforcement officer in the ordinary course of his duties.

The case of United States v. Harpel, 493 F.2d 346 (10th Cir. 1974), cited by Reyes in support of the district court's suppression order is not persuasive. In *Harpel* the government was prosecuting the defendant for disclosing an unlawfully intercepted wire or oral communication between law enforcement officers, a tape recording of which was played by Harpel to persons in a local bar. It was assumed, but not proved, that the interception of the conversation occurred by means of a telephone extension. In its ruling affirming the conviction, the court concluded that "there is no interception if the acquisition of the contents of the communication is accomplished through telephone equipment used in the ordinary course of business." The court then concluded that use of an extension telephone by Harpel would not constitute an exception under the federal statute because Harpel had "overlooked in his reliance on the exception . . . that the telephone equipment must be used 'in the ordinary course of business.' " Finally, the court held that "we do not feel that a telephone used in the manner contemplated *under the facts of this case* is employed in the ordinary course of business." *Id.* at 352 (emphasis added.)

Simply stated, the *Harpel* court properly recognized that the telephone equipment exception requires a use of the equipment in the ordinary course of business, or, in the case of investigative or law enforcement officers, "the ordinary course of [their] duties." Although Harpel was a police officer at the time of the disclosure of the intercepted communication for which he was prosecuted, it is clear from the facts of the case that Harpel was not engaged in investigative or police work in the ordinary course of his duties or otherwise. Harpel was acting on his own for personal purposes as revealed by his publication of the intercepted communication to persons at a local bar. The *Harpel* case does not, therefore,

support Reyes' attempt to emasculate the telephone exception. *Harpel* is of value only insofar as it states the obvious—the telephone exception applies only if the telephone equipment is used by an investigator or law enforcement officer "in the ordinary course of his duties." Our review of the law and the record before us leads us to conclude that in Nevada: (1) wire or oral communications aurally acquired through use of regularly installed telephone equipment by an investigative or law enforcement officer in the ordinary course of his duties does not constitute an "interception;" and (2) the legislature has specifically provided the NRS 179.425(1)(b) exception in order to facilitate efficient, effective police investigative and enforcement activities rather than to impede them.

The cautionary approach taken by the CNU officers in investigating and prosecuting Reyes' criminal drug enterprise was both eminently reasonable and precisely what the people would expect of their law enforcement officers acting within the ordinary course of their duties. In excepting investigative and law enforcement officers using telephone equipment in the ordinary course of their duties from the constraints attached to an "interception," the legislature has focused on "duty" in the ordinary course as the basis for the exemption. Investigative officers primarily investigate, and law enforcement officers primarily enforce our laws; criminal investigations and law enforcement represent the most fundamental and critically necessary aspect of their duties.

For the reasons specified above, we reverse the order entered below suppressing evidence and remand the matter to the district court for further proceedings.

MOWBRAY, C. J, SPRINGER and ROSE, JJ., concur.

YOUNG, J., dissenting:

Respectfully, I dissent.

The interpretation of the "ordinary course of duties" exception by the majority opinion both frustrates the purpose of our statutory scheme and effectively swallows the rule.

NRS 179.425 serves as an exception to the general prohibition of unauthorized interceptions of wire or oral communications and exempts from the definition of "electronic, mechanical, or other device," " any telephone . . . used . . . by an investigative or law enforcement officer in the ordinary course of his duties." NRS 179.460 prescribes the procedure to obtain authorization for the interception of wire or oral communications. Nevada clearly requires all parties to a communication to consent to an interception, absent prior judicial authorization. NRS 200.620. In an emergency situation, NRS 200.620 specifies that a law enforce-

ment officer must obtain prior consent of one party to the communication *and* make a written application to a judge within seventy-two hours of the interception.

The majority's construction of the exception contained in NRS 179.425 effectively emasculates the entire purpose of our statutory scheme: to prohibit law enforcement officers from intercepting communications except with prior judicial authorization in specifically defined circumstances.[1] The interception that occurred in this case was not in the ordinary course of the law enforcement officer's duties because to interpret the exception as such would abrogate the requirements provided in NRS 179.460 and NRS 200.620 that the interception be authorized. Thus, under the majority opinion, *any* telephone extension interception made by a police officer is in the "ordinary course of his duties." I disagree that our legislature intended the exception to swallow the rule; on the contrary, I conclude the intent was dramatically different as delineated below.

Nevada's "wiretap statutes" (NRS 179.410 et seq.) are patterned after the federal wiretap statutes in Title III of the Omnibus Crime Control and Safe Streets Act of 1968. *See* 18 U.S.C. §§ 2510-2520; State v. Bonds, 92 Nev. 307, 309 n.2, 550 P.2d 409, 410 n.2 (1976). The "ordinary course of duties" exception is found in the federal scheme in 18 U.S.C. § 2510(5)(a)(ii). I will first look to the federal legislative history and then to the federal case law interpreting the meaning of the exception.

The legislative history of the "ordinary course of duties" exception contains the following:

> Paragraph (4) defines "intercept" to include the aural acquisition of the contents of any wire or oral communication by any electronic, mechanical, or other device. Other forms of surveillance are not within the proposed legislation. *An examination of telephone company records by law enforcement agents in the regular course of their duties would be lawful because it would not be an "interception."* The proposed legislation is not designed to prevent the tracing of phone calls. The use of a "pen register," for example, would be permissible. . . . The proposed legislation is intended to protect the privacy of the communication itself and not the means of communication.

S. Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S. Code Cong. & Admin. News 2178 (citation omitted)

---

[1]*See* United States v. Giordano, 416 U.S. 505, 514 (1974) (purpose of the comparable federal legislation was to prohibit all interceptions except those specifically provided for, e.g., those permitted to law enforcement officers *when authorized by court order*).

(emphasis added) (hereinafter "Senate Report"). This intent differs substantially from the majority's interpretation that any interception involving a telephone extension in the ordinary course of the law enforcement officer's duties is exempted from the authorization requirement.

Federal courts which have considered the interpretation of the exception seem to base their rationale on the specific facts presented by each case.[2] While no case directly matches the facts in the instant appeal, the case law usefully represents a spectrum of permissible and impermissible police conduct with regard to the "ordinary course of duties" exception. I turn therefore to examine what eavesdropping activities are considered to be in the ordinary course of a law enforcement officer's duties and what activities are outside of the scope of the exception.

In Jandak v. Village of Brookfield, 520 F.Supp. 815 (D.Ill. 1981), the court concluded that:

> [R]outine, nonsurreptitious, recording of a police investigation line which results in the recording of a conversation of an officer misusing the line for private purposes, where the officer should have known that the line was monitored, was in the ordinary course of the police chief's duties as a law enforcement officer, and is exempted from the statute. . . .

*Id.* at 825. The *Jandak* court found the eavesdropping activity in that case to be within the exception. Nevertheless, it rejected a broader interpretation urged by the police department: to apply the exception whenever a police officer is engaged in an investigation and uses the exempted telephone or telegraph equipment. The *Jandak* court wisely opined:

> If the statute did not apply whenever a law enforcement officer was acting in the ordinary course of his duties as this phrase is construed by defendants, then the whole statutory scheme, providing procedures and standards for when and how law enforcement officers may get court orders for electronic eavesdropping, would be rendered meaningless. . . . *This unduly broad reading of the exemption must be rejected.*

*Id.* at 823 (emphasis added). Further, the *Jandak* court noted that the "cases reveal two factors which primarily account for the decision whether the particular monitoring is within the language of the exemption . . . [1] whether the equipment was installed and used for proper business or investigative purposes and . . . [2] the extent to which the eavesdropping was surreptitious, rather than with reasonable notice to the parties to the conversation that calls might be monitored." *Id.* at 823 (footnote omitted).

---

[2]Jandak v. Village of Brookfield, 520 F.Supp. 815, 823 (D.Ill. 1981).

Applying these two factors to the instant case, I conclude that the police officer's acts can only be construed as falling outside of the exception. First, the police directed the informant to use a police telephone to call respondent and instructed an interpreter to eavesdrop on the conversation on an extension line. The State has presented no evidence that the telephone equipment in question was installed for these purposes. Furthermore, the cases which have concluded that the equipment was installed for proper or investigative purposes found there was *routine monitoring* of the telephone lines.[3] The eavesdropping in the instant case was not routine; rather, the police surreptitiously monitored that *particular* phone conversation.

Second, clearly no notice was provided in the instant case to either the informant or to respondent Reyes. Neither the informant nor Reyes had any reason to know that the conversation might be listened to by the police. Therefore, the entire purpose of our statutory scheme, to protect the privacy of wire and oral communications, is heightened by the parties' ignorance of the eavesdropping. Cases which have categorized the eavesdropping activity as outside of the scope of the law enforcement officer's duties have focused on the absence of notice.[4] Additionally, the fact that Nevada is a two-party consent jurisdiction further emphasizes the importance our legislature places on notice.

While the above-mentioned cases are not binding authority upon which this court must rely, they illustrate the spectrum of conduct considered within and outside of the exception. No federal cases have interpreted the exception as expansively as my brothers in the majority.[5]

I turn now to the state court decisions upon which the majority relies. I believe the underlying rationale in the *Page, McDermott,* and *Adams* decisions is wrong, and therefore the majority's reliance upon them is erroneous. *Page, McDermott,* and *Adams* interpret the exception so expansively that the entire purpose of

[3]*See, e.g., Jandak,* 520 F.Supp. 815; United States v. Paul, 614 F.2d 115 (6th Cir.), *cert. denied* 446 U.S. 941 (1980); James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979); Crooker v. United States Dept. of Justice, 497 F.Supp. 500 (D.Conn. 1980); Simmons v. Southwestern Bell Tel. Co., 452 F.Supp. 392 (W.D.Okla. 1978).

[4]*See, e.g.,* Campiti v. Walonis, 611 F.2d 387 (1st Cir. 1979); United States v. Harpel, 493 F.2d 346 (10th Cir. 1974); Gerrard v. Blackman, 401 F.Supp. 1189 (N.D.Ill. 1975); United States v. Banks, 374 F.Supp. 321 (W.D.S.D. 1974).

[5]I quote the astute *Jandak* court: "When considering a statute designed to protect privacy, a court must be reluctant to give expansive reading to the exceptions." *Jandak,* 520 F.Supp. at 820.

requiring law enforcement officers either to obtain prior authorization or to follow the necessary procedures in an emergency situation is rendered meaningless. I remain unpersuaded by this rationale.

The district court properly relied upon United States v. Harpel, 493 F.2d 346 (10th Cir. 1974.) The majority asserts that *Harpel* is distinguishable because there the police officer had no explanation for his conduct, legitimate or otherwise, and the telephone conversation was entirely private. Here, Officer Magee testified about several legitimate law enforcement interests which explained the use of the extension telephone.

There is no indication in *Harpel,* however, that the defendant police officer did *not* have legitimate reasons for eavesdropping on the telephone conversation and tape recording it. Moreover, law enforcement officers presumably could always articulate at least one legitimate interest in eavesdropping on a conversation. The question of whether there was an unlawful interception does not and should not hinge on whether there was a legitimate reason for intercepting. The purpose of the wiretapping statutes is precisely to prevent unlawfully intercepted communication as defined.

In sum, I am persuaded that the interception in question was not in the ordinary course of the law enforcement officer's duties because the narcotics unit has no regular routine or identified and indiscriminate policy of such interceptions. Furthermore, the interception in question was not in the ordinary course of the law enforcement officer's duties merely because the officers were engaged in the investigation of suspected criminal activity or could articulate a purpose related to criminal investigation. The majority's determination effectively swallows the rule against unauthorized wiretapping. Warrantless eavesdropping should not be deemed conduct in the ordinary course of duty because of the potential for abuse by law enforcement.

It seems to me that the majority's interpretation of the exception has substantially departed from the United States Congressional intent when it anticipated that "[a]n examination of telephone company records by law enforcement agents in the regular course of their duties would be lawful because it would not be an 'interception.' " *See* Senate Report, *supra,* at 2178. For the reasons stated above, I am unable to endorse the majority opinion and therefore dissent.